Good morning, Your Honors. Again, Matt Campbell for the Federal Defenders of Eastern Washington and Idaho on behalf of Mr. Klym. And I'll be seeking to reserve three minutes for rebuttal. In summary, a defendant in jail is constitutionally entitled to conduct his own defense. If he elects to do so by rejecting the services of an attorney to conduct his defense, he cannot be confined to his jail simply to look at the four walls and appear on the day of trial to defend himself. He must be afforded reasonable access to resources, and providing counsel's assistance in conducting his own defense is one way of accomplishing this. Other reasonable alternatives consistent with jail or prison management can be utilized. The defendant does not have a right to dictate the alternative chosen so long as a reasonable one is afforded. However, the rejection of an attorney to conduct his defense cannot be considered as a waiver on the reasonable access to the resources necessary to defend himself. To do so would render FRERTA meaningless to a confined defendant. So, counsel, we're here on habeas. So our charge is to determine whether or not the state court decision was contrary to or an unreasonable application of clearly established federal law. So the law is FRERTA, right? FRERTA is one. We believe bounds is the other. Okay. And so tell us why the state court decision was unreasonable or contrary to those cases. Well, and I was reading from the concurring opinion of Judge Hugg and Milton B. Morris, which we cited. We believe it's contrary to FRERTA because FRERTA is essentially based on. Well, FRERTA basically allows a defendant to represent himself. Correct. So what about the state court decision ran afoul of FRERTA? FRERTA, and I believe it's at pages 817 and 818, speaks to the right to defend itself, and it couches that right as a component of due process and specifically references both compulsory process and confrontation. Here, our position is that in this case where the defendant was essentially prevented any access to any legal materials, including the statutes that he was charged with, any research regarding third-party culpability, any research regarding alibi defenses, both of which he stated he intended to utilize at trial, his initially assigned counsel had said that they wished to present those defenses and, in fact, sought and were granted a continuance based on investigation necessary for those defenses. He was completely denied any ability to present those defenses because standby counsel simply refused to do any work on this case. You know, I have trouble in a way. I mean, this is a tricky case in the following sense. What he appears to have wanted or says that he wanted was the ability to present defenses that somebody else did it. Correct. That's not a very complicated legal proposition. You don't really need a law library to show that somebody else did it. What you need is people coming in to testify that somebody else did it. So what do we do with FRERTA unbounds when the issue, in my mind at least, is the law library is not going to be very useful. And what will be useful, if anything is going to be useful at all, is the investigation. Your Honor, I would agree that the investigation is important, but if I could turn to the law library aspect of the research first, and I believe we discussed this in our reply brief at pages 24 to 25. In Washington state law, there are specific rules regarding the ability to present alibi and or third-party defense. They require notice. They require, I can't remember if it's exactly a prima facie case, but one must come forward ahead of time with a reasonable quantum of evidence in order to be allowed to present a third-party defense. So I guess I would disagree with the idea that legal research in this area was irrelevant. If he didn't understand the Washington state evidence code, if he didn't understand, I believe it's the case of State v. Clark, he would be unable to present a third-party defense in any meaningful way and likely would be foreclosed from presenting it because he wouldn't know what showing he had to make. And in regard to investigation, I would agree with Your Honor that investigation would be important into getting witnesses to these things. And I believe it's Court Record 19, Exhibit 12, sort of sub-exhibit F, is his PRP, state habeas petition. And he specifically asked for certain investigation to be done. He identified witnesses who could testify to these various things. He brings this issue up before the court when this issue arises that Standby Counsel won't assist. And the court essentially says, well, you can discuss that with Standby Counsel. And this is when the whole issue comes up. Standby Counsel won't help me. Standby Counsel says, I'm not doing anything unless the court orders me to. And in regard to the investigation, he says, I need funds for investigation. And the court says, well, that's something you should have already discussed with Standby Counsel. I'm not going to do anything about that. So he did try to investigate this case. He did try to do research that I certainly would have done into third-party culpability. He was foreclosed from doing it. Now, specifically focusing on investigation, not law library. Yes. How does the right to investigatory funds or assistance in investigation fit under Ferretta and Bounds? I mean, I'm trying to, you know, we've got to go back to Supreme Court case law. I'm trying to figure out how this fits into the case law. Well, again, under Ferretta, Ferretta does speak about compulsory process and confrontation. But in regard to the ability generally to present a defense, third-party culpability would be his defense. Alibi would be sort of a related defense. If he doesn't have any access to investigative funds, then he has no ability to present that defense. I would also add. So does Ferretta say that he should be guaranteed investigatory funds? I don't think that Ferretta specifically speaks to investigatory funds. But it does speak to the idea that implicit in the right to simply represent yourself is the notion that one has a right to present a defense. I don't know how one could present a defense without at least having the ability to talk to a witness or to even subpoena a witness. We have to have a Supreme Court case that says that. What do you do with Cain versus Garcia that seems to say that Ferretta doesn't promise any specific legal aid that the state owes a defender who's representing himself? What do you do with that case? Cain, we believe, speaks to the proposition that one is not entitled to demand a law library. And it does say that Ferretta. Law library access is what it says. Correct. And in this case, as a factual matter, he was never going to get law library access because Benton County didn't have a law library. But in Cain, the claim was that the particular rights that were denied to these people because they didn't have a law library. And I agree that Ferretta does not establish an absolute right to a law library. But our argument is not that Mr. Klimt's rights were violated because he didn't have access to a law library. Our claim is that he was denied any meaningful opportunity to present his defense. In a slightly related vein, and I would look to McCaskill on this point, it discusses that implicit in the right to defend yourself is the right to present your defense sort of in your own way. And it speaks to a situation where standby counsel actually sort of took over a role in the court, in the case. And ultimately, it says in that case that no, the role standby counsel played was not such to dominate the case. But in our case, unlike McCaskill, standby counsel effectively became counsel. When standby counsel said, I am not going to do this work, I'm not going to do what he asked me to do, the court said, well, standby counsel has learned in the law you are not Mr. Klimt. I'm not going to let him do anything frivolous. The court could have done several things. The court could have ordered standby counsel to do the work. The court could have held an ex parte hearing to figure out what was going on. Or the court could have appointed different counsel. The court did nothing. The court said, it's all up to standby counsel, which effectively made standby counsel, in a sense, counsel, which we believe then denied his rights under both McCaskill and Ferretta since he was no longer running his own defense. Does the claim that the defendant is asserting was denied, that he was denied the ability to assert, must it be have merit or some arguable merit in order for there to be habeas relief? You mean, if I can just ask, do you mean as opposed to say somebody who wants to bring a frivolous defense? Is that what you're asking? Does there have to be some potential merit? Does there have to be a showing by the defendant that there was a possibility of prevailing in order for there to be a denial of access to the court? Your Honor, I don't believe that one has to strictly show more likely than not or any particular quantum of evidence in regard to presenting a defense. I suppose at some level if a defendant wanted to present something that was completely frivolous, you know, a legal defense that had no bearing in the law or something along those lines. How do we know that this proposed defense was not legally frivolous? Well, I don't think third party culpability or alibi could really ever be considered legally frivolous. Well, but if there are no facts to support it, it could be frivolous. Well, I would turn back to prior counsel. He was initially represented by prior counsel. Prior counsel determined that these were the defenses that they wished to investigate, that they wished to prepare for, and in fact were given at least one if not more continuances. They stated that it was absolutely their belief that someone else did it, that they were aware of witnesses who could possibly testify to an alibi defense. So unless we are to assume that prior counsel was constitutionally ineffective under Strickland, there was some basis in fact for this defense. So I don't think this, while not saying one could never present a frivolous defense, this wasn't it, unless we presume that prior counsel didn't know what they were doing. And unless there are any other questions, I'll reserve what time I don't have. Thank you, counsel. May it please the Court. My name is Greg Rosen. I'm an assistant attorney general, and I represent the respondent in this matter. Clem waived his Ferretta claims when he requested and was granted representation by counsel two and a half months before he proceeded to trial. And even if he did not waive, the Supreme Court unequivocally held in Cain v. Suspicio that a violation of law library access as based on Ferretta was not a basis for federal habeas relief. Judge Fletcher, you asked counsel, what does Ferretta say about investigation? And Cain spoke to that specifically. In Cain, the Supreme Court said, and I'm quoting, Ferretta says nothing about any specific legal aid that the state owes a pro se defendant. End quote. That's at 546 U.S. at 10. Consequently, Ferretta says nothing about investigation. It says nothing about access to the court or law libraries. The Supreme Court did not hold in Bounds v. Smith, nor has any subsequent Supreme Court case held, that Bounds applies to pretrial criminal detainees who decline counsel. There is no federal constitutional right to standby counsel. Consequently, there is no federal constitutional right to the effective assistance of standby counsel. And Klim talks about it in his brief to this court about a Hobson's choice. He was forced into this position of either having forced representation of counsel or having ineffective standby counsel. But it is a false Hobson's choice. I submit that it is an illusory Hobson's choice because that assumes that he is entitled, that he has a federal constitutional right to effective assistance of standby counsel. And no such right exists. But he didn't want standby counsel. I'm sorry, Your Honor? He didn't want standby counsel. That's true. It was forced on him. And then the court said, well, you know, I can't deal with you about what you need. You've got to deal with the standby counsel, who said, I don't want to do anything. You know, it may not be that he has a violation under Ed Book since nobody ever does. But it's really a difficult legal proposition to understand that you want to represent yourself, which I'm not a great believer in, to start with. But the way the law is, you have a right to do that, to represent yourself. And then the judge says, well, okay, but if you're going to do that, I'm going to give you standby counsel. And then we're only going to do what standby counsel says. And standby counsel says, I'm not going to do anything. I don't believe the record reflects, Judge Reinhart, and I could be incorrect in this that standby counsel, Mr. Johnson never said, I'm not going to do anything. He's just not going to do anything that the defendant asked him to do. Well, Judge Fletcher, I respectfully disagree. I understand where you're coming from. The defendant said, I would like him to do the following things. He says, I'm not going to do it. I see nothing in the record that there were things that the standby counsel was asked to do that he did do. He might have done some things that weren't asked, but they weren't asked. Is there something that the defendant asked standby counsel to do that the standby counsel actually did? I'm not aware of anything in the record as to the request made by Mr. Klim other than a request for standby counsel to research third-party perpetrator evidence. And counsel indicated, I'm not going to do that unless the trial court orders me to do that. And there was some discussion earlier as to why standby counsel, I think, may have taken that position. Mr. Klim was previously represented by counsel before he entered this 29-day window of time from July 13th to August 11th when he represented himself with standby counsel. His prior counsel, Mr. Arnold, made certain comments, and counsel here has alluded that counsel wanted to present third-party perpetrator evidence. But the prior statements of Mr. Arnold at ER 213, we're not going to attack a particular person. And at ER 214, it's not so much that we're saying there's a third party that does it. And again, at 213-14, we're not going to put on evidence to try and convict a specific third party. There was no third-party evidence. There was no third-party perpetrator. In fact, counsel indicated as much, although counsel also spoke inconsistently to the trial courts and said, we absolutely believe, in fact, there was a third-party perpetrator. I would submit that the latter statement is clearly inconsistent with the prior statements that I've read from the record. Well, no, it's not inconsistent. It may not be a good legal position. But what he was saying is we're not going to present any evidence because we don't know who these people are, but we believe there was one. He said we're not going to attack a particular person, Your Honor. And it's not so much – I'm sorry, Your Honor. Not a particular person, but an unidentified person, maybe, or unspecified person, but a person nevertheless. Well, at ER 214, Judge Rawlinson, prior counsel said, quote, it's not so much that we're saying there's a third party, third person that does it. It's not just the person is unidentified, but rather there is no third-party perpetrator. In fact, what prior counsel, Mr. Arnold, was trying to get at was essentially to impeach the alleged victim, now victim in this particular case, by suggesting essentially she was not stable, that she didn't get along with folks, that her perception of reality, as I understand it, in his view, was not always accurate. And his way of going about it was to create some sort of nebulous defense that somebody else did it, but was also straight with the court and said, we're not going to attack a particular person. That's the whole point of third-party perpetrator evidence, is that you point to a third party and say, this person did it, not my client. Well, I think the legal propositions here are more disturbing than what the facts really are in the case. And I think there's some factual problems. I don't know, for instance, I agree with Dick Fletcher that the real problem is not having an investigator if you're going to try to prove this kind of a defense. But as far as I can tell, there's no claim that the deprivation of investigator is the issue here. Am I right about that? As I understand Mr. Klim's claims, his complaints are primarily oriented to the fact that he wasn't given access to the law library. And obviously, Cain v. Specia comes down solidly and disposes of that certified claim. But he also asked, in direct response to your question, Judge Reinhart, he also asked for discovery. He asked for photocopying ability. I think he did it and make a motion for an investigator. So I think the investigation request was part of his complaint. Was that all appealed, the investigator issue? Was that appealed and is it now presented to us that the- I'm not understanding the court's question, I'm sorry. Did he appeal the denial of an investigator? I think that was part of his appeal in the state court. And that's part of the habeas? That's my understanding, yes. But my understanding is the main thrust of his habeas appeal, as it were, is the fact that he was denied law library access, he was denied photocopying capability. Well, maybe main thrust. But a thrust is that he was denied an investigator? I think that was part of his appeal. I think that would be accurate to say. But again, Cain speaks to that and said- It's a Sixth Amendment case, isn't it? Yes, I believe it is. Is this a Fifth Amendment case? My understanding is that it is also a Sixth Amendment case. But it is a Fifth Amendment. I mean, Cain's is difficult to understand fully. It does say Ferretta doesn't give you any rights because there are no Supreme Court cases. No specific legal aid is owed by a state to a pro se defendant. That's what Cain says as to Ferretta. Under the Sixth Amendment. It would logically seem that the same answer would be true under the Fifth Amendment. But I don't think that Cain decides that issue. Which would normally help you. But the fact is that there's nothing that decides the Fifth Amendment issue either. And there's no Supreme Court decision that says you have any rights under Ferretta. Unless you can help us with that. Well, I understand the distinction you're making, Judge Reinhart, between the Fifth and Sixth Amendments and what Cain speaks to. But I think Cain's verbiage is pretty, respectfully, pretty unequivocal. When it says Ferretta says nothing about any specific legal aid that the state owes a pro se defendant. I think that subsumes all of Mr. Clinton's complaints. Whether it's law library access, photocopying, investigation, and things of that nature. I said there's some disturbing things about it. But what you would say is if you exercise your Ferretta rights, you have no right to anything after that. I'm not prepared to use that sort of black and white, all-encompassing. Well, is there anything the Supreme Court has said about your rights under Ferretta? Well, what the Supreme Court does say in Ferretta is that by making the knowing and intelligent choice to represent oneself, one relinquishes certain traditional benefits of having counsel. And I think the point that's important to remember here is that when Mr. Klim requested counsel, he waived Ferretta. You can't have representation by counsel and also pursue your Ferretta rights. They don't coexist simultaneously. But you can discharge your counsel and have Ferretta rights? Yes, certainly. Isn't that what happened here? I mean, wasn't he given Ferretta rights by the court? Yes, he was permitted by the trial court to represent himself on July 13th of 2005. So he has whatever rights you have under Ferretta? Yes, and then on August 11th, 2005, he requested to be represented by counsel, thus waiving those rights. When he requested to be represented by counsel, he waived his Ferretta rights. Was he given counsel? Yes. In fact, he was given the same counsel ultimately two-and-a-half months later he proceeded to trial with on October 25th. Standby counsel, Judge Reinhart, was appointed. Let me correct. Mr. Klim was permitted to represent himself on July 13th, 2005. Standby counsel was appointed at that same time. Subsequently, on August 11th, 2005, Mr. Klim asked for counsel to represent him. Mr. Johnson, who was standby counsel, was appointed as counsel on August 11th, and then two-and-a-half months later, on October 25th, proceeded to trial with Mr. Johnson as his counsel. Okay. Unless the panel has any further questions, I'm prepared to stand down. Thank you very much. If I could just briefly respond to a couple of items. Opposing counsel states that Mr. Klim waived his claims under Ferretta essentially by requesting counsel, and we just wish to point out in Excerpts 287, the defendant made it clear when he actually finally requested counsel that he was doing so because, in his opinion, his rights had been violated and he had no ability to defend himself. As we argue in our brief, we don't believe that that should be considered a waiver, and our position is that the violations were complete at that point. Opposing counsel also mentioned a two-and-a-half-month time period after he waived his rights, and, in fact, trial was imminent at that point. When standby counsel was appointed to be counsel, there were then continuances granted. So at the time that Mr. Klim was making this decision, trial was, I think, a week away. In regard to Kane, while we agree, it says- At the time, the then schedule was very shortly, but then there was a continuance. So, in fact, it was- There was a continuance given to standby counsel who had then become trial counsel. So between the time that Mr. Johnson is appointed as actual counsel- Correct. And trial is about two-and-a-half months? Probably about two months. That half a month was a period Mr. Klim would have had left. Okay. I just wanted to speak in regard to Kane. Again, while it may state that there's no specific means guaranteed by FREDA, we believe that that reference to specific means refers to law library as opposed to standby counsel or as opposed to some other reasonable alternative. I don't believe that FREDA stands for the proposition that you can defend yourself, but, again, that you have to sit in a cell staring at four walls and then just walk in and do the best you can. Bounds, while it was not a pretrial detainee case, I would argue that it would be a perverse result to state that somebody on, say, federal habeas or even state habeas would have a right of access to materials while somebody who's actually defending themselves at presumably the main event wouldn't have those same rights. That would seem to stand trial procedure versus habeas procedure on its head. Unless there are any other questions, I thank the Court for the additional time. Thank you, counsel. The case just argued will be submitted.
judges: Reinhardt, Fletcher W. , Rawlinson